■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RODNEY ARNOLD, Appellant.— Appeal from a judgment of the County Court of Ulster County, rendered May 12, 1971, upon a verdict convicting defendant of the crime of manslaughter in the first degree. Appellant was indicted for the

murder of Elizabeth Blaustein, whose death occurred on June 1, 1970. On the prior evening, after having dinner at appellant's home, Mrs. Blaustein and appellant went for a ride in her Volkswagen station wagon. Apparently, they were having an illicit relationship even though both were married. At approximately 1:30 A.M. on the next morning Mrs. Blaustein was found slumped over the steering wheel of the station wagon apparently injured. At the scene, she was questioned by John Bennett, a truck driver who had stopped to offer his assistance. Other help was summoned, and Mrs. Blaustein was driven to the Ellenville Community Hospital where she was pronounced dead on arrival. Her death was caused by gunshot wounds. About one hour later, appellant was found by the State Police lying on the front lawn of a home approximately three miles from the place where Mrs. Blaustein's station wagon had been stopped. Appellant had a severe gunshot wound in his head, and was taken to the Kingston Hospital for treatment. Later the State Police found the revolver near the place where appellant was discovered wounded, which revolver apparently had been used to fire the shots that caused the wounds to Mrs. Blaustein and appellant. At the trial Bennett testified as a witness and stated that Mrs. Blaustein had told him that she wanted to get to a hospital and that she had been shot. Her first response, when he asked her who shot her, was "I did. Get me to a hospital. I am dying." However, when he told her she could not have shot herself in the back, she answered "No, my boy friend shot me." Appellant contends that the admissibility of the statement by the decedent identifying her "boy friend" as her assailant was hearsay and constitutes prejudicial error. We agree. There was no foundation that would qualify the statement as part of the *res gestae*, a dying declaration, or as a spontaneous statement. Before a dying declaration can be admitted, it must be shown that the decedent believed she was dying and had no hope of recovery and, if, as here, there is a belief that there is the slightest chance of recovery, the statement is inadmissible. (*People* v. *Allen*, 300 N. Y. 222.) Before a declaration can be admitted as a spontaneous statement, the utterance must spring spontaneously and instinctively from the stress and excitement caused by the act of homicide, and must be made soon after the act so as to preclude the idea of deliberation, fabrication and design. (*People* v. *Marks*, 6 N Y 2d 67, cert. den. 362 U. S. 912; *People* v. *Del Vermo*, 192 N. Y. 470; 4 ALR 3d 149.) Decedent's statement here was made in answer to an inquiry from the witness and there is no evidence as to the time interval between the assault and the declaration. Decedent's declarations were not shown to have been spontaneously made, and, for that reason, they should not have been received in evidence. (*People* v. *Williams*, 28 A D 2d 819; *People* v. *Hughes*, 11 A D 2d 874.) Since a new trial must be ordered, the only other issue to be discussed is the question of whether the trial court properly denied the motion to suppress the revolver recovered at the site where the State Police found appellant wounded. Shortly after appellant's arrival at the hospital, he was asked by a State Trooper where the gun was that caused his head injury, and he replied that it was in front of the place where he was found wounded. Appellant contends, that, since he was questioned without having been given the *Miranda* warnings, the discovery of the revolver by reason of the questioning, and its admission in evidence, violate his constitutional rights. We agree with the trial court that appellant was not in custody at the time of the questioning, and that the facts available at the time indicated only an attempt at suicide and not the suspicion of a commission of some other crime. The motion to suppress the revolver found by the State Trooper was properly denied. Judgment reversed, on the law, and a new trial ordered. Staley, Jr., J. P., Greenblott, Cooke, Kane, and Reynolds, JJ., concur.